## Blanton et al. v. Noel.

Dec. 19, 1941.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellant.

C. L. Bell for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This declaratory judgment action was originally filed in the Franklin circuit court on May 2, 1940, by D. C. Moore, the then Director of the Division of Motor Transportation of the Department of Business Regulations, and H. Clyde Reeves, Commissioner of Revenue of the Department of Revenue, as plaintiffs, against the de-

fendant and appellee, R. W. Noel. Since then Moore has ceased to fill the office he then occupied and has been succeeded by W. W. Blanton, whose name has been substituted in the petition as a plaintiff for that of Moore.

The purpose of the action, as set forth in the petition, was and is to obtain a judicial interpretation of exemption "Four" in Section 2739j-94 in Baldwin's 1936 Revision of Carroll's Kentucky Statutes, relieving private contract carriers of freight for hire in this commonwealth from complying with other provisions of the legislation of which the section is a part—the legislation appertaining to the operation of motor vehicles on the highways of this commonwealth. One of its sections prescribes that such carriers—as owners and operators of the vehicle within the provision of the act for the purpose stated—shall, before beginning the operation, obtain a certificate or permit so to do from the Director of the Division of Motor Transportation of the Commonwealth, and to pay the statutory fee therefor; whilst another section levies an excise tax against such operator for the privilege of engaging in such business. However, Section 2739j-94, supra, exempts certain vehicles, and owners and operators thereof, from the provisions of the act, which exemptions are classified under four distinct classes, the last one of which (the 4th) defendant claims exempts and relieves him from obtaining and paying for the certificate or permit required by the act, as well as the excise tax it imposes, and being of that conclusion he declined to do either; whereupon the two departments by their respective heads filed this declaratory judgment action against him for the purpose of obtaining an adjudication of their differences.

Exemption "Four" referred to, so far as is relevant for a decision of the question, is thus phrased: "Motor vehicles engaged exclusively in the transportation of agricultural, livestock and dairy products from the farm, market, gin, warehouse, dairy or mill where the weight of the truck and the load does not violate the laws of this State or any other provision of this act, whether such motor vehicle is owned by the owner or producer of such agricultural, farm or dairy product or not, so long as the *title* remains in the producers and the word 'producer' shall include a landlord where the relations of landlord and tenant or landlord and cropper are involved." (Our emphasis.)

The entire controversy hinges upon the question as to what does the italicised word "title" refer to in the inserted excerpt from the statutes, i. e., whether it refers to the transporting vehicle or vehicles, or to the produce or commodities transported? The learned trial judge was of the conclusion that the word "title," as so appearing, referred to the transporting vehicle and not to the products being so transported, and being of that opinion he dismissed the petition, to reverse which plaintiffs prosecute this appeal.

No brief has been filed for appellee, but the very lucid one filed by appellant clearly shows by numerous adjudications that if the word "title," as employed in the inserted excerpt therefrom, refers to the produce being transported and not to the transporting vehicle, then defendant must comply with the two provisions of the statute above referred to by obtaining and paying for a permit or certificate, and to also pay the excise tax for the privilege of operating his vehicle in the manner set forth in the stipulation of facts upon which the adjudication below was made. It is a part of that stipulation: "(4) That R. W. Noel is not a farmer but makes a business of hauling for hire by motor vehicle, certain products set forth below. (5) That R. W. Noel operates four motor vehicles over the highways of Kentucky in this business, the title to each truck being in R. W. Noel, each truck weighing a minimum of 6,000 pounds. (7) That R. W. Noel hauls for hire from the market, gin, dairy or mill, agricultural, livestock and dairy products such as fruits, wood, lumber, timber, livestock, meat, cotton, fertilizer and household goods and supplies transported to the farm of the purchaser for farm purposes. The title to such products being in the purchaser." Neither the intervening omitted stipulation (6), nor any of the others contained in the entire stipulation are necessary for the determination of the submitted question, and for which reason they are not inserted.

We are clearly of the opinion that the learned trial judge erroneously interpreted the language of the statute, which we will now proceed to substantiate. In the case of Priest v. State Tax Commission, 258 Ky. 391, 80 S. W. (2d) 43, we held a statute of our legislature unconstitutional which attempted to exempt from certain statutory exactions required of such motor transportation carriers because the statute attempted to exempt the

carrier from complying with the provisions of the act when the transportation may not have been for the benefit of the producer or farmer, but for the benefit of another, perhaps a purchaser. The Supreme Court of the United States in the case of Smith v. Cahoon, 283 U. S. 553, 563, 51 S. Ct. 582, 583, 75 L. Ed. 1264, held a Florida statute unconstitutional which exempted the hauler of certain products ''from the point of production to the assembling or shipping point enroute to primary market.'' But, in the cases of Continental Baking Company v. Woodring, 286 U. S. 352, 52 S. Ct. 595, 76 L. Ed. 1155, 81 A. L. R. 1402, and Hicklin v. Coney, 290 U. S. 169, 54 S. Ct. 142, 78 L. Ed. 247, an exempting Kansas statute was upheld when the exemption applied only to transporting vehicles owned by the farmer or producer. In distinguishing those cases from the Cahoon case the court held that in the Cahoon opinion the Florida statute under consideration therein attempted an arbitrary discrimination between the affected class of *carriers* based upon the class of *commoditties or produce* transported by them; whilst in the two later cases ''the exemption runs only to one who is carrying his own livestock and farm products to market or supplies for his own use in his own motor vehicle.'' [258 Ky. 391, 80 S. W. (2d) 45.]

In the still later case of Aero Mayflower Transit Company v. Georgia Public Service Commission, 295 U. S. 285, 55 S. Ct. 709, 710, 79 L. Ed. 1439, the Supreme Court had before it for interpretation a statute of the state of Georgia exempting vehicles transporting the named products whether they (vehicles) were ''owned by the owner or producer of such agricultural or dairy products or not, so long as the title remains in the producer.'' The word ''title'' therein was construed by the Supreme Court of the state of Georgia—in the opinion from which the appeal was prosecuted to the Supreme Court (see 179 Ga. 431, 176 S. E. 487)—as referring to the *ownership* of the *produce* being transported, and not to the owner of the vehicle in which or by which the transportation was made. Those opinions—the one from the Supreme Court of Georgia and the other from the Supreme Court of the United States—furnish substantial authority for the view that the learned trial court's interpretation was and is erroneous, since the language of the respective statutes involved (the one enacted by the Georgia legislature and the other being our statute

now under consideration) is practically identical. It is at least so in substance, and effect, and the interpretation made by the two highly respected courts appears to violate no rule for the guidance of the philologist.

The right of exemption under the classified exemption "Four" as contained in the section of the statute is, "whether such motor vehicle is owned by the owner or producer of such agricultural, farm or dairy product or not, so long as the title remains in the producers," etc. Evidently the word "title" was not intended to refer to anything or to any object, except such as may have been *produced* by the "producers," and, since they did not manufacture, create or *produce* the transporting vehicle, the only other object, or objects, to which it could refer is the character of freight that the transporter hauls in his vehicle. Indeed, the first part of the last inserted excerpt supra from the statute expressly says that the exclusion applies whether the vehicle was "owned by the producer * * * or not." There would, therefore, seem to be no point in supplementing that statement by the phrase "so long as the title remains in the producers" if it refers to the ownership of the vehicle, since the statute had already said, in substance, that it made no difference, so far as the right of exemption is concerned, as to who owned the vehicle, whether the farmer or the producer, but if the transporter owned the vehicle and the producer of the articles specified in the statute continues to own them, then the exemption would apply. As a corrollary thereto the exemption would not apply when the title to the exempted freight designated in the statute had passed to another, since in that event it would not remain "in the producers." To hold otherwise would conflict with our opinion rendered in the Priest case, supra, and also convict the legislature of intending to bottom its exemption on the character of freight hauled rather than on the classified title holding producers and owners of that freight who were having it transported after acquiring title thereto and during the time they held such title. The favoritism was intended to be bestowed on the producer of such freight and not on the person who might transport it after the producer had parted with the title to it. It must be admitted, however, that the language of the exemption is more or less ambiguous; but it should be so construed, if possible, in a manner to evaporate any pending fog that might hang over its phraseology so as to make it express

110

a clear and legitimate purpose in its enactment and to carry out the intention of the legislature in enacting it.

Our conclusion, therefore, is that the interpretation made by the learned trial judge was and is incorrect and, therefore, erroneous. Instead he should have adjudged—and which we now do (as being the correct interpretation)—that defendant had no right to transport in his vehicle under private contract for hire any of the products mentioned in the statute for, or any contract with a purchaser thereof or anyone else from and after the time the title to such products passed from the producer to another. Stipulation (7) supra admits that he is so engaged as a part of his business as a private contract carrier, and that he was so engaged at the time and during the years for which he was required to obtain a permit or certificate and also required to pay the excise tax exacted by the statute. He should, therefore, be adjudged to pay such demands with attached penalties and to continue to do so each year so long as he continues in the character of transportation above set out.

Wherefore, the judgment is reversed, with directions to enter one in conformity with this opinion.

The Whole Court sitting.